# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| DYLAN STACY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:24-cv-00470 |
| | ) | |
| CLARKSVILLE POLICE | ) | |
| DEPARTMENT, CITY OF | ) | |
| CLARKSVILLE, and JAMAL | ) | |
| ALQUZWEENI, individually and in his | ) | |
| official capacity, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

This civil rights case arises from Plaintiff Dylan Stacy's allegation that Clarksville Police Officer Jamal Alquzweeni falsely arrested and maliciously prosecuted him without probable cause. Before the Court is Defendants the City of Clarksville ("City"), the Clarksville Police Department, and Clarksville Police Officer Jamal Alquzweeni's Motion to Dismiss the Amended Complaint. (Doc. No. 20). This matter is fully-briefed and ripe for review. (See Doc. Nos. 22, 24, 26). For the following reasons, Defendants' Motion will be granted in part and denied in part.

## I.    FACTUAL ALLEGATIONS[1]

Stacy operates and owns D & R Custom Hardscapes, a professional home contractor business that provides home improvement services for properties in or around Clarksville, Tennessee. (Compl. ¶¶ 10, 101). On July 12, 2023, Stacy contracted with Curtis Meyers to

---

[1] The facts in this section are drawn from the operative First Amended Complaint (Doc. No. 14) ("Complaint" or "Compl.") and are accepted as true for purposes of ruling on the instant motion to dismiss. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (noting that "when ruling on a defendant's motion to dismiss, a judge must accept as true all factual allegations contained in the complaint").

perform work on his home in exchange for $63,470.00. (Id. ¶ 10). Pursuant to their contract, Meyers paid Stacy one-third of the total amount of the project (or $21,156.67) that same day. (Id. at ¶ 11).

Shortly after July 12, 2023, Stacy informed Meyers "that work would not begin immediately, and that there existed a backlog of projects and a backlog of materials needed for the project." (Id. ¶ 12). Meyers apparently was unsatisfied with this information and continued reaching out to Stacy asking him to begin the home improvement project. (Id. ¶ 13). In late July or early August 2023, Meyers "became increasingly impatient[,] demanded a return of his initial payment" of $21,156.67, and asked Stacy to cancel the entire project. (Id.). Stacy, on August 14, 2023, refunded Meyers the full amount of his initial deposit of $21,156.67 by mailing a check to his home address. (Id. ¶ 15).

On August 10, 2023 (four days before Stacy mailed Meyers the refund check), Meyers contacted the Clarksville police to pursue criminal charges against Stacy. (Id. ¶ 16). After speaking with Meyers, Officer Alquzweeni created and signed the following Affidavit of Complaint,[2] dated August 24, 2023:

> I further state under oath that the essential facts constituting the offense(s), the sources of my information and the reasons why this information is believable and reliable are as follows:
>
> On 08/10/2023 at 08:43 hours, Officers with the Clarksville Police Department responded to a call for service at 135 Commerce St. Clarksville, TN. Contact was made with the victim, Curtis Myers, who stated that he had been defrauded by a contractor he hired to do work at his residence. Mr. Myers advised that on 7/12/23, he entered into a contract with Mr. Dylan Stacey and was required to pay 1/3 of the

---

[2] The Court may consider the Affidavit of Complaint (Doc. No. 11-1 at 2) and Arrest Warrant (Doc. No. 11-1 at 1) in this case without converting the instant Motion into a motion for summary judgment because both documents are referenced in the Complaint (Compl. ¶ 16), integral to Stacy's federal and state law false arrest claims, and matters of public record. See Hayes v. White, 2025 WL 309049, at *1 n.1 (E.D. Tenn. Jan. 27, 2025) (citing Money Ctr., Inc. v. Ill. Union Ins. Co., 508 F.3d 327, 335–36 (6th Cir. 2007)).

2

total amount upfront.  Mr. Myers advised that he gave $21,156.67 in the form of a cashier's check to Dylan Stacy, on the same day, 7/12/23.  Mr. Myers stated that after approximately a week, he reached out to Mr. Stacy on multiple occasions to check the status of the scheduling of their project.  Mr. Myers was able to produce text conversations between him and Mr. Stacy asking about a start date for their project.  The conversation had a text from Mr. Stacy that apologized for the delay with the excuse that he had been out of town for a birthday.  Mr. Myers then stated that Mr. Stacy eventually was given an ultimatum; schedule the project or return the down payment.  Mr. Myers advised that Mr. Stacy informed him the money would be returned on 8/8/23 or 8/9/23.  Mr. Myers further advised that his money has not been returned and no further contact from Mr. Stacy has been returned.  Mr. Myers also informed that he drove by the location of Mr. Stacy's office and found a "For Sale" sign in front of the business.  Mr. Myers sent a written request for a refund via USPS-certified mail which was delivered to Mr. Stacy's registered address.[3]

(Doc. No. 11-1 at 2).  The Affidavit of Complaint further alleged that Stacy committed a "Home Improvement Service Provider Offense," in violation of Tennessee Code Annotated § 39-14-154. (Id.).  Based on these allegations, a Tennessee Judicial Commissioner issued an Arrest Warrant for Stacy for allegedly committing a Section "39-14-154 Home Improvement Service Provider Offense."  (Id. at 1).  Stacy's bond was set at $100,000.00.  (Id.).  On August 24, 2023, Officer Alquzweeni effectuated the Arrest Warrant and arrested Stacy.  (Compl. ¶¶ 19–20).  At that time, only forty-three days had elapsed since Stacy and Meyers formed their contract.  (Id.).  For reasons not explained in the Complaint, Stacy's charge for violating Section 39-14-154 "has since been dismissed."  (Id. ¶¶ 22, 55).

Stacy alleges that his arrest, imprisonment, and prosecution were illegal because an individual cannot violate Section 39-14-154 unless "[m]ore than (90) days have elapsed since the starting date of the . . . contract for home improvement services," and therefore it was impossible

---

[3] Contrary to the last sentence in the Affidavit of Complaint, the Complaint alleges that Meyers "did not hand deliver, nor did he send a written request for a refund by certified mail."  (Compl. ¶ 13).  But given that this dispute of fact is not relevant to the Court's rulings, the Court need not resolve this issue now.

for Stacy to have violated that statute. (Id. ¶ 22 (quoting Tenn. Code Ann. § 39-14-154)). He further alleges that his "mug shot and the attention this matter has received on social media in the Clarksville area, in addition to [his] humiliation in general, have [cost] him numerous jobs and substantial monetary losses that have destroyed his ability to earn an income and provide for both him and his family." (Id. ¶¶ 26–27).

Moreover, the Complaint alleges that Officer Alquzweeni's wrongful conduct was "not a one-off incident" because he had previously falsely arrested a different Clarksville contractor, Jamie Rivera, without probable cause to believe he violated Tenn. Code Ann. § 39-14-154. During a hearing in Rivera's case, Officer Alquzweeni allegedly stated "that it was his opinion that any time someone takes money for a job and that job is not one hundred percent [complete] that is fraud." (Id. ¶ 34). Stacy claims that the City "woefully failed to train and properly supervise Officer Alquzweeni in this area of policy," and therefore "ratified and condoned" the "repeated conduct of Officer Alquzweeni" arresting contractors without probable cause. (See id. ¶¶ 90, 92).

As a result, Stacy brought constitutional claims under 42 U.S.C. § 1983 against Officer Alquzweeni for Unreasonable Search and Seizure (Count 1), False Arrest and False Imprisonment (Count 2), and Malicious Prosecution (Count 8). (Id. ¶¶ 39–60, 95–102). Based on the same facts, Stacy also brings claims against Officer Alquzweeni under Tennessee law for False Arrest (Count 3), Malicious Prosecution (Count 4), False Imprisonment (Count 5), and Intentional Infliction of Emotional Distress (Count 7). (Id. ¶¶ 61–77, 84–94). Stacy also brought a § 1983 claim against the City, including the Clarksville Police Department, under a theory of municipal liability. (Id. ¶¶ 84–94). Stacy seeks an award of $500,000.00 in compensatory damages, at least $1,000,000.00 in punitive damages, and an injunction requiring the City to properly train and supervise its

employees and officers.  (Compl. at Page 22 (Prayer for Relief)).  Defendants now move to dismiss all eight counts.  (Doc. Nos. 20, 22).

## II.    <u>LEGAL STANDARD</u>

A defendant may move under Federal Rule of Civil Procedure 12(b)(6) to dismiss a case for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  To survive a Rule 12(b)(6) motion, the Complaint must include a "short and plain statement of the claim showing that the pleader is entitled to relief."  <u>Ryan v. Blackwell</u>, 979 F.3d 519, 524 (6th Cir. 2020) (quoting Fed. R. Civ. P. 8(a)(2)).

When determining whether the Complaint meets this standard, the Court must accept the complaint's factual allegations as true, draw all reasonable inferences in the plaintiff's favor, and "take all of those facts and inferences and determine whether they plausibly give rise to an entitlement to relief."  <u>Doe v. Baum</u>, 903 F.3d 575, 581 (6th Cir. 2018); <u>see also</u> <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678–79 (2009).  Moreover, the Court must determine only whether "the claimant is entitled to offer evidence to support the claims," not whether the plaintiff can ultimately prove the facts alleged.  <u>Swierkiewicz v. Sorema N.A.</u>, 534 U.S. 506, 511 (2002) (quoting <u>Scheuer v. Rhodes</u>, 416 U.S. 232 (1974)).  "While the complaint 'does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions'" or "'a formulaic recitation of a cause of action's elements[.]'"  <u>Blackwell</u>, 979 F.3d at 524 (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007)).

## III.    <u>ANALYSIS</u>

The Court will first address a few easily disposable matters before turning to the more substantive arguments in Defendants' motion.  First, the Court will dismiss Stacy's sole § 1983 claim against the Clarksville Police Department because "a police or sheriff's department or office is not an entity capable of being sued under 42 U.S.C. § 1983."  <u>Leis v. Alcohol, Tobacco & Firearm</u>

_Agency_, 2021 WL 1907830, at *3 (M.D. Tenn. May 11, 2021) (collecting cases); Matthews v. Jones, 35 F.3d 1046, 1049 (6th Cir. 1994). Second, the Court will dismiss Stacy's claims against Officer Alquzweeni in his *official capacity*, (see Compl. ¶ 5), because when an "entity is a named defendant, official capacity claims against individual sheriffs and police officers are 'redundant' and 'superfluous.'" Epperson v. City of Humboldt, 140 F. Supp. 3d 676, 683 (W.D. Tenn. 2015) (quoting Foster v. Mich., 573 F. App'x 377, 390 (6th Cir. 2014)). Third, the Court will dismiss Stacy's claim for an award of punitive damages against the City because "it is well-settled that a municipality or county government is 'immune from punitive damages under 42 U.S.C. § 1983.'" Smith v. Shelby Cnty., 721 F. Supp. 2d 712, 722 (W.D. Tenn. 2010) (quoting City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 271 (1981)). Last, the Court will dismiss as duplicitous Stacy's federal and Tennessee law claims for *false imprisonment* in Counts 2 and 5 because those claims completely overlap with his *false arrest* claims in Counts 2 and 3. See Weser v. Goodson, 965 F.3d at 513, 517 (6th Cir. 2020) (holding that when a § 1983 or Tennessee law "false-imprisonment claim arises out of an alleged false arrest—as it does in this case—those claims are identical" and the Court "will simply refer to those two claims together as a false-arrest claim"); Lee v. Ritter, 2005 WL 3369616, at *20 (E.D. Tenn. Dec. 12, 2005) ("A false arrest by a police officer is one means of committing a false imprisonment.").

With these straightforward issues out of the way, the Court now turns to Defendants' motion to dismiss Stacy's § 1983 and Tennessee law claims against Officer Alquzweeni in his individual capacity, and the § 1983 municipal liability claim against the City.

A.    Section 1983 Claims Against Officer Alquzweeni in His Individual Capacity

Stacy asserts several claims under § 1983 against Officer Alquzweeni in his individual capacity. To bring a successful claim under § 1983, a plaintiff must establish "that (1) a person, (2) acting under color of state law, (3) deprived the plaintiff of a federal right." Berger v. Mayfield

<u>Heights</u>, 265 F.3d 399, 405 (6th Cir. 2001). "By its terms, § 1983 creates no substantive rights; it merely provides remedies for deprivation of rights established elsewhere." <u>Gardenhire v. Schubert</u>, 205 F.3d 303, 310 (6th Cir. 2000) (citation omitted). Here, Stacy alleges that Officer Alquzweeni—clearly a person acting under color of state law—violated his "Fourth and Fourteenth Amendment rights" when he filed a false Affidavit of Complaint that led to Stacy's false arrest and imprisonment. (<u>See</u> Compl. ¶¶ 40, 42, 49, 51). Based on these events, Stacy brings federal claims against Officer Alquzweeni for an Unreasonable Search and Seizure (Count 1), False Arrest and False Imprisonment (Count 2), and Malicious Prosecution (Count 8).

Officer Alquzweeni not only disputes the merits of these claims, but he also argues he is entitled to qualified immunity. (<u>See</u> Doc. No. 22 at 22–24). "The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" <u>Pearson v. Callahan</u>, 555 U.S. 223, 231 (2009) (quoting <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982)). "Once raised, it is the plaintiff's burden to show that the defendants are not entitled to qualified immunity." <u>Burgess v. Fischer</u>, 735 F.3d 462, 472 (6th Cir. 2013) (citation omitted). "In determining whether a defendant is entitled to qualified immunity, the court makes two inquiries: (1) '[t]aken in the light most favorable to the party asserting the injury [(i.e. Stacy)], do the facts alleged show the officer's conduct violated a constitutional right[,]' and (2) was the right clearly established to the extent that a reasonable person in the officer's position would know that the conduct complained of was unlawful." <u>Kennedy v. City of Cincinnati</u>, 595 F.3d 327, 336 (6th Cir. 2010) (citing <u>Saucier v. Katz</u>, 533 U.S. 194, 201 (2001)).

"[A]lthough qualified immunity is available at the motion to dismiss stage, it is generally inappropriate . . . to grant a 12(b)(6) motion to dismiss on the basis of qualified immunity."

MacIntosh v. Clous, 69 F.4th 309, 315 (6th Cir. 2023) (citation and internal quotation marks omitted). As the Sixth Circuit has explained, "an officer's entitlement to qualified immunity is a threshold question to be resolved at the earliest point, but that point is usually summary judgment and not dismissal under Rule 12." Id. (citation and internal quotation marks omitted). "This is for good reason—development of the factual record is frequently necessary to decide whether the official's actions violated clearly established law." Id. (citation and internal quotation marks omitted).

Applying these standards, the Court will now address each of Stacy's alleged constitutional violations in turn.

### 1. Unreasonable Seizure (Count 1) and False Arrest (Count 2)

Whether described as an "unreasonable search and seizure," a "false arrest," or a "false imprisonment," Stacy's claims in Counts 1 and 2 of the Complaint are based on the same underlying allegation: that Officer Alquzweeni arrested Stacy without probable cause to believe he committed a crime, in violation of his "Fourth and Fourteenth Amendment rights." (See Compl. ¶¶ 40, 42, 49, 51). As an initial matter, these claims arise under the Fourth Amendment, not the Fourteenth Amendment. See Weser v. Goodson, 965 F.3d 507, 513 (6th Cir. 2020); Arbuckle v. City of Chattanooga, 696 F. Supp. 2d 907, 921 (E.D. Tenn. 2010). The false arrest claim also appears to be redundant of the unreasonable seizure claim because "[a]ctions under [§ 1983] based upon claims of false arrest or false imprisonment are properly analyzed as unreasonable seizures under the Fourth Amendment." See McPhearson v. Anderson, 874 F. Supp. 2d 573, 580 (E.D. Va. 2012) (citation omitted). Accordingly, the Court will analyze Counts 1 and 2 together as if they were the same claim for an unreasonable seizure.

The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV.

"It is a well-settled principle of constitutional jurisprudence that an arrest without probable cause constitutes an unreasonable seizure in violation of the Fourth Amendment." Ingram v. City of Columbus, 185 F.3d 579, 592–93 (6th Cir. 1999). Thus, to successfully state a § 1983 claim for false arrest under the Fourth Amendment, Stacy must plausibly allege that Officer Alquzweeni "lacked probable cause to arrest" him. Voyticky v. Vill. of Timberlake, 412 F.3d 669, 677 (6th Cir. 2005). An officer has probable cause to arrest "when, at the moment the officer seeks the arrest, the 'facts and circumstances within [his] knowledge and of which [he] had reasonably trustworthy information [are] sufficient to warrant a prudent man in believing that the [plaintiff] had committed or was committing an offense.'" Wesley v. Campbell, 779 F.3d 421, 429 (6th Cir. 2015) (quoting Beck v. Ohio, 379 U.S. 89, 91 (1964)).

Officer Alquzweeni's motion to dismiss relies heavily on the fact that he arrested Stacy pursuant to an arrest warrant issued by a Judicial Commissioner. (See Doc. No. 22 at 9). "An arrest pursuant to a facially valid warrant is normally a complete defense to a constitutional claim for false arrest . . . made pursuant to § 1983," Voyticky, 412 F.3d at 677 (citation omitted), because "the fact that a neutral magistrate has issued a warrant is the clearest indication that the officers acted in an objectively reasonable manner," Messerschmidt v. Millender, 565 U.S. 535, 547 (2012) (citation omitted). However, an arrest warrant that issues without probable cause is invalid. Raspberry v. Bramley, 2022 WL 2661562, at *2 (W.D. Tenn. May 11, 2022) (citing United States v. Baker, 976 F.3d 636, 641–42 (6th Cir. 2020)). To show that the Arrest Warrant was invalid (and to therefore rebut the presumption of probable cause), Stacy must plausibly allege that "in order to procure the warrant," Officer Alquzweeni "knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that create[d] a falsehood" and "such

statements or omissions [we]re material, or necessary to the [magistrate judge's] finding of probable cause." Sykes v. Anderson, 625 F.3d 294, 305 (6th Cir. 2010) (citation omitted).

Importantly, the Sixth Circuit has held that "what constitutes probable cause depends on the nature of the criminal statute." Evans v. City of Etowah, 312 Fed. App'x 767, 769 (6th Cir. 2009) (citations omitted); see also Logsdon v. Hains, 492 F.3d 334, 341 (6th Cir. 2007). Stacy was arrested and charged with a home improvement service provider offense under Tenn. Code Ann. § 39-14-154. (See Doc. No. 11-1). As relevant here, Tenn. Code Ann. § 39-14-154 provides that "[i]t is an offense for a . . . home improvement services provider with intent to defraud to . . . [f]ail to refund amounts paid under a . . . contract for home improvement services" within a specified time frame. The statute further provides that a home improvement services provider, like Stacy, cannot violate this provision *unless* "[m]ore than ninety (90) days have elapsed since the starting date of the . . . contract for home improvement services." Id. Officer Alquzweeni acknowledged in his Affidavit of Complaint that the starting date of the relevant contract for home improvement services was "7/12/23" (or July 12, 2023), meaning it was *legally impossible* for Stacy to have violated Section 39-14-154 when Officer Alquzweeni submitted the Affidavit only forty-three days later on August 24, 2023.

Viewing the Complaint's allegations in the light most favorable to Stacy, the Court finds that the Complaint plausibly alleges that Officer Alquzweeni lacked probable cause to believe Stacy committed a crime under Tenn. Code Ann. § 39-14-154. Accepting these allegations as true, the Court may also infer that Officer Alquzweeni recklessly disregarded the truth in his Affidavit of Complaint (and therefore manufactured probable cause to procure an arrest warrant) by asserting Stacy violated that statute. Plus, if the Affidavit of Complaint was not supported by probable cause, it is plausible that the resulting Arrest Warrant was invalid. These allegations

sufficiently rebut the presumption of probable cause, and Officer Alquzweeni cannot rely on the Arrest Warrant as a "complete defense" to Stacy's false arrest claim at this stage. (See Doc. No. 22 at 8–9). The Court further finds that, based on the allegations in the Complaint, Officer Alquzweeni did not otherwise have probable cause for a warrantless arrest because "no reasonable competent officer would have concluded on these facts that probable cause existed" to arrest Stacy for violating Section 39-14-154. See Sykes v. Anderson, 625 F.3d 294, 308 (6th Cir. 2010) (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)) (internal quotation marks omitted). Finally, if Officer Alquzweeni falsely arrested Stacy, then he would not be entitled to qualified immunity because "[t]he constitutional right to 'freedom from arrest in the absence of probable cause' is clearly established within" the Sixth Circuit. Courtright v. City of Battle Creek, 839 F.3d 513, 520–21 (6th Cir. 2016) (quoting Wesley, 779 F.3d at 428).

In sum, the Court will deny Defendants' motion to dismiss Counts 1 and 2 of the Complaint because Stacy plausibly alleges that Officer Alquzweeni lacked probable cause to arrest him. To tidy the record and narrow the issues in dispute moving forward, however, the Court will require Stacy to either combine Counts 1 and 2 of the Complaint into a single count, or to show cause as to why his § 1983 unreasonable seizure and false arrest claims should proceed as separate causes of action.

2.      Malicious Prosecution (Count 8)

Officer Alquzweeni also moves to dismiss Stacy's § 1983 malicious prosecution claim against him, which the Sixth Circuit describes as "a constitutional claim—grounded in the Fourth Amendment—against government officials whose 'deliberate or reckless falsehoods result in arrest and prosecution without probable cause.'" Creger v. Tucker, Nos. 23-5045/5047, 2024 WL 124437, at *10 (6th Cir. 2024) (quoting Newman v. Twp. of Hamburg, 773 F.3d 769, 771–72 (6th Cir. 2014)). To successfully bring a § 1983 malicious prosecution, a plaintiff must plausibly allege

four elements: "(1) the defendant made, influenced, or participated in the decision to prosecute the plaintiff; (2) there was no probable cause for the prosecution; (3) as a consequence of the legal proceedings, the plaintiff suffered a deprivation of liberty apart from the initial arrest; and (4) the criminal proceeding was resolved in the plaintiff's favor." Monson v. City of Detroit, Nos. 22-2050/2122, 2024 WL 84093, at *6 (6th Cir. Jan. 8, 2024) (quoting France v. Lucas, 836 F.3d 612, 625 (6th Cir. 2016)). Ironically, "malice is not an element of a § 1983 suit for malicious prosecution." Sykes, 625 F.3d at 310.[4]

Officer Alquzweeni moves to dismiss Stacy's § 1983 malicious prosecution claim solely on the first element, arguing that the Complaint does not allege that he "made, influenced, or participated in the decision to prosecute" Stacy. (Doc. No. 22 at 18–22). To satisfy this element, the Complaint must plausibly allege that the officer in question "participate[d] in a way that aids in the decision [to prosecute], as opposed to passively or neutrally participating." Sykes, 625 F.3d at 308 n.5. "[A]n officer participates in a decision to prosecute when he or she testifies falsely at a preliminary hearing and the false statements were material to the finding of probable cause, or where the officer provides false statements to the prosecutor." Stigall v. Louisville Jefferson Cnty. Metro Gov't, 2018 WL 4775506, at *5 (W.D. Ky. Oct. 3, 2018) (citing Sykes, 625 F.3d at 312–

---

[4] The Court pauses briefly to summarize the major practical differences between a Fourth Amendment false imprisonment claim and a malicious prosecution claim. A false imprisonment ends once the victim is detained pursuant to *legal process*, such as an arrest warrant, after which a malicious prosecution claim provides the remedy for the wrongful institution of that legal process. See Wallace v. Kato, 549 U.S. 384, 388–90 (2007). This difference is relevant to damages because "[i]f there is a false arrest claim, damages for that claim cover the time of detention up until issuance of process or arraignment, but not more." Id. at 390. "From that point on, any damages recoverable must be based on a malicious prosecution claim and on the wrongful use of judicial process rather than detention itself." Id. Another difference between these claims relates to the statute of limitations, as the clock for a malicious prosecution claim starts running when the case is terminated in plaintiff's favor, rather than when he is arrested. See Dawson v. Monroe Cnty., 2014 WL 700400, at *4 (E.D. Tenn. Feb. 24, 2014).

17); see also Gokor v. Schlievert, 2021 WL 1061918, at *2 (N.D. Ohio Mar. 19, 2021) (holding that "Plaintiff need not show malice to establish liability, but must show Defendant made 'deliberate or reckless falsehoods' resulting in arrest and prosecution without probable cause"). Other courts have held that the participation element is satisfied if "the officer who applied for the warrant should have known that his application failed to establish probable cause." Williams v. Aguirre, 965 F.3d 1147, 1158, 1165 (11th Cir. 2020) (internal quotation marks omitted); see also Novak v. City of Pharma, 33 F.4th 296, 307 (6th Cir. 2022) (holding that an officer participates in the decision to prosecute when he could "reasonably foresee that his misconduct" would result in the prosecution of the plaintiff).

Applying these standards, the Court finds that the Complaint sufficiently states a federal malicious prosecution claim against Officer Alquzweeni. The Complaint does not allege, as Defendants argue, that Officer Alquzweeni should be held liable for malicious prosecution merely because he was negligent, "should have known" that evidence of a crime was lacking, or failed to investigate the matter fully. (See Doc. No. 22 at 18–22). Rather, it plausibly alleges that Officer Alquzweeni's "participation [was] marked by some kind of blameworthiness" because he submitted an Affidavit of Complaint that lacked probable cause to arrest Stacy for violating Tenn. Code Ann. § 39-14-154, knew the affidavit lacked probable cause, and used the affidavit to secure an invalid Arrest Warrant based on his subjective belief about what constitutes fraud. See Johnson v. Moseley, 790 F.3d 649, 655 (6th Cir. 2015). Accepting these allegations as true, and drawing every inference therefrom in Stacy's favor, it is at least plausible that Officer Alquzweeni could reasonably foresee that his false Affidavit of Complaint would aid in the decision to prosecute Stacy. As a result, Officer Alquzweeni is not entitled to qualified immunity at this stage because "individuals have a clearly established Fourth Amendment right to be free from malicious

prosecution by a defendant who has made, influenced or participated in the decision to prosecute the plaintiff by, for example, knowingly or recklessly making false statements that are material to the prosecution either in reports or in affidavits filed to secure warrants." King v. Harwood, 852 F.3d 568, 582–83 (6th Cir. 2017).

Accordingly, the Court will deny Officer Alquzweeni's motion to dismiss Stacy's federal malicious prosecution claim.

B.      Tennessee State Law Claims Against Officer Alquzweeni in His Individual Capacity

1.      False Arrest (Count 3) and Malicious Prosecution (Count 4)

Stacy notes in his opposition brief that Defendants' motion "does not address counts three, four, or five," which are Tennessee law claims against Officer Alquzweeni for False Arrest, Malicious Prosecution, and False Imprisonment.  (See Doc. No. 24 at 19).  Defendants disagree, claiming that Officer Alquzweeni "argues in the Motion that he enjoys qualified and state statutory immunity from those Counts."  (Doc. No. 26 at 5).  In his Motion, however, Officer Alquzweeni merely contends that "in the event [Stacy] pursues a claim against [him] based on his allegedly negligent acts/omissions while in the scope of his employment, [he] enjoys immunity under the" Tennessee Governmental Tort Liability Act ("GTLA").  (Doc. No. 22 at 24 (citing Tenn. Code Ann. § 29-20-310(c)).  Because the Court has already decided to dismiss Count 5 (False Imprisonment) as duplicative of Count 3 (False Arrest), the Court need only address Officer Alquzweeni's argument as it relates to Counts 3 and 4.

Where, as here, a police officer is sued in his individual capacity, Defendants are correct that his Tennessee statutory immunity is governed by the GTLA in Tenn. Code Ann. § 29-20-310(c).  Taylor v. Harsh, 2020 WL 864989, at *5 (Tenn. Ct. App. Feb. 21, 2020).  But under that section, "[a]n individual employee of a governmental entity is immune when the governmental

entity for which he works is immune from suit, *unless* the employee's act or omission was willful, malicious, criminal, or performed for personal financial gain." Autry v. Hooker, 304 S.W.3d 356, 363 (Tenn. Ct. App. 2009).  The Complaint clearly alleges in Counts 3 and 4 that Officer Alquzweeni's actions were willful and malicious.  (Compl. ¶¶ 65, 71, 77).  Accordingly, for purposes of Defendants' motion to dismiss, Stacy has plausibly alleged that Officer Alquzweeni is not entitled to statutory immunity under Tenn. Code Ann. § 29-20-310(c) against his claims for false arrest and malicious prosecution.  Given that Officer Alquzweeni does not otherwise move to dismiss these claims on the merits, there is no other basis for the Court to dismiss Counts 3 and 4 at this time.

### 2.    Intentional Infliction of Emotional Distress (Count 6)

In contrast to the claims above, Officer Alquzweeni has specifically moved to dismiss Stacy's Tennessee law claim against him for intentional infliction of emotional distress ("IIED"). To survive a motion to dismiss, a plaintiff bringing an IIED claim under Tennessee law must plausible allege that "the defendant's conduct was (1) intentional or reckless, (2) so outrageous that it is not tolerated by civilized society, and (3) resulted in serious mental injury to the plaintiff." Rogers v. Louisville Land Co., 367 S.W.3d 196, 205 (Tenn. 2012).  The Court finds that the Complaint easily satisfies the first prong because it plausibly alleges that Officer Alquzweeni's actions were intentional or reckless.  (See Compl. ¶¶ 78–83).

For the second prong, Stacy alleges that Officer Alquzweeni engaged in outrageous conduct when he "arrested, jailed, and maliciously prosecuted [him] without any legal basis."  (Id. ¶ 79).  A defendant can be liable for IIED only if his conduct is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency and to be regarded as atrocious, and utterly intolerable in a civilized community."  Miller v. Willbanks, 8 S.W.3d 607, 614 (Tenn. 1999) (citation omitted).  "[T]he standard for outrageous conduct is high, indeed, and

cases finding conduct sufficient to support an intentional infliction of emotional distress claim are few and far between." Finley v. Kelly, 384 F. Supp. 3d 898, 912 (M.D. Tenn. 2019) (citations omitted); see also Cossairt v. Jarret Builders, Inc., 292 F. Supp. 3d 779, 789 (M.D. Tenn. 2018) (citations omitted) (providing examples of outrageous conduct, including a case "where a mother was shown her deceased premature baby in a gallon jar of formaldehyde"). "[M]ere insults, indignities, threats, annoyances, petty oppression or other trivialities fail to constitute outrageous conduct." Gray v. McDonald's USA, LLC, 2012 WL 2819451, at *4 (W.D. Tenn. May 30, 2012) (citing Levy v. Franks, 159 S.W.3d 66, 83 (Tenn. Ct. App. 2004)).

Despite this high standard, at least one district court in the Sixth Circuit has found that a plaintiff plausibly alleged an IIED claim under Tennessee law by alleging that an officer "caus[ed] an arrest warrant to be issued without probable cause." See Raspberry v. Thompson, 2015 WL 1393385, at *2 (W.D. Tenn. Mar. 25, 2015). The Court certainly shares Defendants' concerns that following Raspberry and allowing Stacy's IIED claim to proceed on these allegations could mean that "every case involving an alleged false arrest and/or malicious prosecution would be a case involving IIED[.]" (Doc. No. 26 at 1). But taking the allegations in the Complaint as true, it is plausible that Officer Alquzweeni's actions meet the requisite threshold for outrageousness, especially if, as alleged, he used his official law enforcement position to "purposefully [bring] fantom charges against [an] innocent citizen[], like the Plaintiff, that on their face have no basis in the law." (See Compl. ¶ 81); accord Cooper v. Dist. of Columbia, 548 F.Supp.3d 170, 184 (D.D.C. 2021) (assuming without deciding that Fourth Amendment violations could necessarily be outrageous enough to support an IIED claim under D.C. law).

The third prong presents a closer call, but the Court also finds that the Complaint plausibly alleges Stacy suffered a "serious mental injury." A serious mental injury occurs when "a

reasonable person, normally constituted, would be unable to adequately cope with the mental stress engendered by the circumstances of the case." Eskin v. Bartee, 262 S.W.3d 727, 735 n.21 (Tenn. 2008) (citation omitted). The Tennessee Supreme Court has held that several "nonexclusive factors inform the analysis" of whether the plaintiff suffered a serious mental injury, and those factors include evidence of physiological manifestations of emotional distress, evidence of psychological manifestations of emotional distress, and evidence that the plaintiff has suffered significant impairment in his or her daily functioning. See Rogers, 367 S.W.3d at 209–10. Stacy alleges that his injuries are sufficiently serious because, as a result of Officer Alquzweeni's outrageous conduct, he has been "stigmatized" and "shamed" by "his community," his "business has been destroyed," and his "mental trauma has been such that it has even taken the form of physical manifestations." (Compl. ¶¶ 79, 82). Drawing every reasonable inference from these allegations in Stacy's favor, the Court concludes that Stacy has alleged barely enough facts to be entitled to offer evidence to support his IIED claim later in this case.

Because Stacy plausible alleges that Officer Alquzweeni's conduct was sufficiently outrageous, and that his alleged injuries rise to the level of a serious mental injury, the Court will deny Officer Alquzweeni's motion to dismiss his IIED claim.

C.    Section 1983 Municipal Liability Claim Against the City (Count 7)

The City next argues that the Court should dismiss Stacy's § 1983 municipal liability claim because the "Complaint fails to adequately identify a policy or custom of the City that was allegedly the moving force behind any" constitutional violation by Officer Alquzweeni. (Doc. No. 22 at 8). The Court disagrees.

The Supreme Court in Monell held that a municipality, like the City, may only be held liable under § 1983 in limited circumstances where an official "policy or custom" was the moving force behind a violation of the plaintiff's constitutional rights. Monell v. Dep't of Soc. Servs., 436

U.S. 658, 694 (1978). A municipality "may not be sued under Section 1983 for an injury inflicted solely by its employees or agents." Id.; see also Burgess v. Fischer, 735 F.3d 462, 479 (6th Cir. 2013) (holding that Monell prohibits respondeat superior liability). "A plaintiff can make a showing of an illegal policy or custom by demonstrating one of the following: (1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations." Burgess, 735 F.3d at 478. As the Sixth Circuit has held, "which theory [the plaintiff] ultimately pursues (or which theory can survive summary judgment) may largely depend on discovery" and what the evidence can show, but the Court "need not answer that question" at the motion to dismiss stage. See Osberry v. Slusher, 750 F. App'x 385, 389–99 (6th Cir. 2018).

Although the Complaint does not identify a specific source of a policy or custom designed by the City that contributed to Stacy's alleged false arrest, it does allege facts to support an inference that the City (via Officer Alquzweeni) has "a documented history of prosecuting professional contractors under Tennessee's contractor fraud statute" without "reasonable suspicion or probable cause." (See Compl. ¶ 86). Specifically, Stacy alleges that Officer Alquzweeni arrested another contractor, Rivera, under the same Tennessee statute, and that the General Sessions Court dismissed those charges for lack of probable cause. (Id. ¶¶ 30–34). Officer Alquzweeni also allegedly stated under oath that he believes a contractor violates Tenn Code Ann. § 39-14-154 if he merely "takes money for a job and that job is not one hundred percent complete," regardless of how much time had passed since the start of the contract. (Id. ¶ 34). Taking these factual allegations as true, the Complaint has identified at least two potential ways in which a City of Clarksville policy could have contributed to Officer Alquzweeni's mistake of law (and therefore

Stacy's false arrest): (1) the City's failure to train or supervise Officer Alquzweeni with respect to arresting contractors for violating Tenn Code Ann. § 39-14-154, and, plausibly, (2) the City's "custom of tolerance or acquiescence" of Officer Alquzweeni's allegedly unconstitutional conduct.

To establish <u>Monell</u> liability for a municipality's "policy of inadequate training or supervision," the plaintiff must allege: "(1) the training or supervision was inadequate for the tasks performed; (2) the inadequacy was the result of the municipality's deliberate indifference; and (3) the inadequacy was closely related to or actually caused the injury." <u>Ellis ex rel. Pendergrass v. Cleveland Mun. Sch. Dist.</u>, 455 F.3d 690, 700 (6th Cir. 2006). A plaintiff can show a municipality is deliberately indifferent to constitutional rights if he can plausibly allege: (1) "prior instances of unconstitutional conduct demonstrating that the [municipality] has ignored a history of abuse and was clearly on notice that the training in this particular area was deficient and likely to cause injury"; or (2) "a single violation of federal rights, accompanied by a showing that a municipality has failed to train its employees to handle recurring situations presenting an obvious potential for such a violation[.]" <u>Fisher v. Harden</u>, 398 F.3d 837, 849 (6th Cir. 2005).

The crux of Stacy's municipality claim is that if Officer Alquzweeni wrongly arrested someone else (e.g. Rivera) for violating Tenn. Code Ann. § 39-14-154 in the past, and the City did "not correct[] or disciplin[e]" that "plainly obvious mistake," then the City should be held responsible for being deliberately indifferent or for having "ratified and condoned this improper, illegal, and unconstitutional conduct." (Compl. ¶¶ 84–94). These allegations, accepted as true, could suggest that the City has an unofficial policy, or "culture," of ignoring Officer Alquzweeni's decisions to arrest contractors under Tennessee's contractor fraud statute without probable cause. (<u>Id.</u> ¶¶ 86, 89). For purposes of ruling on Defendants' motion to dismiss, it is at least plausible that the City ratified Officer Alquzweeni's actions, tolerated his conduct, or was deliberately

indifferent to the constitutional rights of contractors arrested by Officer Alquzweeni. Nothing more is needed to deny the City's motion at this time.

The City nevertheless argues that dismissal is appropriate because a "single additional, and nearly contemporaneous, incident involving the same officer" does not satisfy Monell under a custom of tolerance theory. (Doc. No. 22 at 3–4). In support, the City cites the Western District of Tennessee's decision in Humphrey v. Friar, which held that complaints about "the unjustified acts of a single municipal employee, Rickie Friar" are "not sufficient to state a claim against [the municipality] as a whole." (Doc. 22 at 6 (citing 2018 WL 8807154, at *12 (W.D. Tenn. Sept. 28, 2018)). The Court finds Humphrey distinguishable from the facts alleged in this case because Humphrey involved a one-off incident where an off-duty police officer, Friar, sexually assaulted the plaintiffs' minor children while he was babysitting them. Humphrey, 2018 WL 8807154, at *2. The Humphrey court ultimately dismissed the municipal liability claim because the plaintiffs failed to allege that the City was aware of Friar's crimes, and because they did not "allege facts that plausibly support the proposition that [the City] adopted or embraced any persistent or widespread unconstitutional practices such that Friar's sexual abuse of Plaintiffs' minor children would be considered standard operating procedure" in the City. Id. at *12. Here, on the other hand, Stacy has alleged that the City knew that Officer Alquzweeni previously arrested Rivera under the *same* statute involved in this case without probable cause, and that the City knowingly turned a blind eye to Officer Alquzweeni's unlawful conduct in the past.

The City also cites an unpublished decision from the Northern District of Texas holding that one incident of excessive force against peaceful protestors in 2018, followed by a separate incident in 2020, is not a "persistent, widespread practice" that "is so common and well settled as to constitute a custom that fairly represents municipal policy." Monacelli v. City of Dallas, 2022

WL 4668054, at *7 (N.D. Tex. Sept. 30, 2022) (citation omitted).  It then held that "[o]ther than conclusory allegations and boilerplate recitations, the Amended Complaint does not contain sufficient allegations to state a plausible claim that the City's training policies or procedures were inadequate, let alone facts that could state a claim that the need for more or different training was obvious."  Id. at *11.  Monacelli's holding appears to be limited to the specific allegations in that case, and the Court respectfully declines to apply that nonbinding holding here because Officer Alquzweeni's alleged documented history of arresting people for violating Tenn. Code Ann. § 39-14-154 makes it at least plausible that the City has a custom of tolerating identical constitutional violations by Officer Alquzweeni.  The remaining cases cited in the City's brief involve motions decided at the summary judgment stage or later, and therefore have little to no persuasive value at the 12(b)(6) stage.  (See Doc. No. 22 at 6–7.)

To be sure, the City may ultimately prevail on this issue on summary judgment or at trial (where it will have the benefit of discovery and a more substantial factual record) by showing that it trained its officers properly and did not have any official policy or custom that led to the deprivation of Stacy's Fourth Amendment rights.  But taking the allegations in the Complaint as true, and drawing all reasonable inferences in Stacy's favor, the Court finds that the Complaint plausibly alleges a municipal liability claim under § 1983.  Accordingly, Defendants' motion to dismiss Count 7 will be denied.

## IV.    **CONCLUSION**

For the foregoing reasons, Defendants' Motion to Dismiss Amended Complaint (Doc. No. 20) will be granted in part and denied in part.  The Motion will be granted to the extent it seeks dismissal of Stacy's claims against the Clarksville Police Department, his claims against Officer Alquzweeni in his official capacity, his claim for punitive damages against the City, and his false

imprisonment claims against Officer Alquzweeni in his individual capacity. The Motion will be denied in all other respects.

An appropriate order will enter.

_____
WAVERLY D. CRENSHAW, JR.
UNITED STATES DISTRICT JUDGE